UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DERRYLE S. McDOWELL,

        Petitioner,

  v.                                                             Case No. 05-C-0498

PHILLIP KINGSTON,

        Respondent.

## DECISION AND ORDER

Derryle S. McDowell filed this petition pursuant to 28 U.S.C. §2254, asserting that his state conviction was obtained in violation of right to the effective assistance of counsel guaranteed by the Sixth Amendment of the Constitution. A jury trial found him guilty of robbery with the use of force, contrary to Wis. Stat. § 943.32(1)(a), kidnaping, contrary to Wis. Stat. § 940.31(1)(a), and five counts of first-degree sexual assault with the use of a dangerous weapon, contrary to Wis. Stat. § 940.225(1)(b). He was sentenced to 200 years in prison.

McDowell claims that the performance of his appointed counsel, Ronald Langford, was so deficient that the trial outcome was presumptively prejudicial. Respondent concedes that McDowell's attorney erred by having McDowell switch from question-and-answer to narrative format halfway through his testimony. However, respondent maintains that the error neither caused actual prejudice nor fits within the category of conduct that merits a presumption of prejudice. Both the Wisconsin Court of Appeals and the Wisconsin Supreme Court agreed and upheld the conviction. Because the state court decisions are neither contrary to, nor unreasonable applications of clearly established federal law, McDowell's petition will be denied and his action dismissed.

## BACKGROUND

On April 21, 1997, Merranda S. was robbed and sexually assaulted by two strangers behind a building at 4720 W. Burleigh Street in Milwaukee, Wisconsin. *Wisconsin v. McDowell*, 2003 WI App 168, ¶ 5, 266 Wis. 2d 599, 669 N.W.2d 204. Merranda was unable to provide descriptions of her assailants, but reported she had been penetrated orally and vaginally by both penis and gun barrel. After the assault, she spat ejaculate on the ground. Police recovered a sample of the victim's saliva from the scene mixed with semen containing McDowell's DNA. They also recovered evidence containing the DNA of the second man, who eventually pled guilty. McDowell pled not guilty and stood trial for the offenses in May of 2000. *Id.* ¶ 6. Attorney Langford was McDowell's state-appointed counsel. *Id.*

The facts relevant to this appeal begin on the morning of the third day of trial after the State rested. Langford addressed the court before the jury was brought in: "As the Court is aware, we had an off-the-record conversation in chambers, at which time I advised the Court that I had some concerns about testimony that I anticipated being proffered to the Court before this jury this morning." *Id.* ¶ 9. Langford was impliedly concerned that McDowell would testify untruthfully. Mindful of the ethical obligation not to "offer evidence that the lawyer knows to be false," Wis. Supreme Court Rule 20:3.3(a)(4), Langford expressed concern over whether he could continue to represent McDowell in the event McDowell elected to testify. The trial court advised Langford that he could take McDowell's testimony in narrative form, instead of the traditional question and answer format. *Id.* ¶ 10. The court considered this to be a middle-ground approach, reconciling Langford's divergent duties of representing his client and professional responsibility to the court.

After conferring with his client, Langford informed the court that McDowell would testify in the conventional question-and-answer fashion and began taking McDowell's testimony. *Id.* ¶ 11. However, after a few perfunctory questions Langford was handed a note stating, "[Assistant State Public Defender William J.] Tyroler says go with a narrative. Tell that to the client. It must be a narrative." *Id.* ¶ 21. Langford, without consulting his client or interrupting the testimony, directed McDowell to continue his testimony in narrative fashion. *Id.* Specifically, he instructed McDowell, "I want you to look at this jury and tell this jury about the events of April 20 and 21 of 1997. Take your time and speak loudly and clearly, please." *Id.* ¶ 13.

As McDowell began, Langford, presumably sensing the confusion, asked if the court wanted a sidebar. The judge responded, "I certainly do." *Id.* Another off-the-record discussion occurred which the court and counsel summarized for the record after the case was submitted to the jury. *Id.* ¶ 14. Langford recounted for the record that during the sidebar conference he advised his client that they would proceed in narrative fashion, that they had previously discussed narrative testimony and that McDowell was familiar with the narrative format. *Id.* ¶ 16. However, McDowell testified later at the *Machner* hearing[1] that the sudden switch of format made him extremely nervous and confused, especially because it was his first time testifying before a jury. *Id.* ¶ 22. McDowell also testified that Langford "never said that [he] m[ight] have to testify in a narrative fashion." *Id.* In any event, after that sidebar McDowell's testimony continued in narrative fashion. *Id.* ¶ 14. As a result of the abrupt

---

[1]The *Machner* hearing is the evidentiary hearing held on a defendant's claim of ineffective of counsel during which testimony from trial counsel, as well as the defendant, may be offered regarding the alleged deficient performance. *See State v. Machner*, 285 N.W.2d 905 (Wis. App. 1979).

3

change from question-and-answer to entirely narrative testimony, McDowell claimed that he failed to include in his account to the jury several facts crucial to his defense.²

Whether Langford's performance was deficient is not in dispute. The State concedes Langford rendered deficient performance at trial when he abruptly directed McDowell to testify in narrative form because he did not believe he would testify truthfully. (Resp.'s Br. at 9.) It also appears that McDowell has abandoned any argument that he demonstrated that he suffered actual prejudice as a result of Langford's performance. McDowell's only argument is that the facts of the case are such that prejudice must be presumed. While acknowledging that prejudice will be presumed only in rare instances, he argues that his petition qualifies as one of those rare cases on two grounds. First, he asserts, counsel's deficiencies arose out of a conflict of interest between his ethical obligations to the court and his duty as advocate to his client. Because courts, including the United States Supreme Court, have recognized conflicts of interest as grounds for presuming prejudice, prejudice must be presumed here. Second, McDowell characterizes Langford's deficient performance as one that resulted in the actual or constructive denial of counsel at a critical stage of the proceeding. The Supreme Court has also held that actual or constructive denial of counsel warrants a presumption of prejudice, so prejudice must be presumed.

---

²The most damning evidence against McDowell was the fact that his semen was found at the crime scene mixed with the victim's saliva. In defending against this evidence, McDowell intended to explain to the jury that he had oral sex with his girlfriend in the same alley on the evening before the assault and ejaculated on the ground, apparently on the same spot where victim of the assault later spat. Although his attorney recounted this evidence in his opening statement to the jury and McDowell testified that he had oral sex in the back alley with his girlfriend, he forgot to specifically deny any involvement in the assault and expressly state that he had ejaculated on the ground. In his federal habeas action, McDowell has abandoned his contention that he suffered actual prejudice as a result of Langford's insistence that he testify in narrative fashion. (Pet.'s Br. at 21.)

4

## ANALYSIS

A federal court is authorized to grant habeas corpus relief to a state prisoner only upon a showing that "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The granting of such relief by federal courts is further limited by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which "significantly constrain any federal court review of a state court conviction. *Searcy v. Jaimet*, 332 F.3d 1081, 1087 (7th Cir. 2003). Under AEDPA, habeas corpus relief for persons serving sentences imposed by state courts may not be granted on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Facts determined by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant is burdened with rebutting the presumption of correctness by clear and convincing evidence. *Id.*

When determining whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law, lower federal courts must look exclusively to Supreme Court precedent in reviewing habeas petitioners' claims. *Sweeney v. Parke*, 113 F.3d 716, 718 (7th Cir. 1997). Petitioners "must show that the Supreme Court has 'clearly established' the propositions essential to their position." *Mueller v. Sullivan*, 141 F.3d 1232, 1234 (7th Cir. 1998). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts

the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The state court decision involves an unreasonable application of such law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

The petitioner in the current case claims that the State is confining him in violation of his Sixth Amendment right to counsel. The Sixth Amendment provides in pertinent part:

> In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. Const. Amend. VI. The Supreme Court, in a pair of cases decided the same day, affirmed that the right to counsel entails a right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Cronic*, 466 U.S. 648 (1984). *Strickland* and *Cronic* divide ineffective assistance of counsel claims into two groups. The first, described in *Strickland*, consists of cases where counsel's "acts or omissions [are] outside the wide range of professionally competent assistance" and a prejudicial outcome results. *Id.* at 690. The second group, described in *Cronic*, consists of cases where counsel's acts or omissions are so likely to have prejudiced the outcome, no showing of actual prejudice is required. The two standards are described in greater detail below. Suffice it to say at this point *Strickland* and *Cronic* offer two different standards with

6

which to evaluate alleged Sixth Amendment violations. The case before this court turns on the determination of *which standard applies*; specifically, whether or not prejudice will be presumed.

When are the actions or omissions of counsel so pervasive that prejudice will be presumed without any examination of the fairness of the trial outcome? Given the infinite number of forms ineffective assistance of counsel can take, the Court does not attempt to list all qualifying circumstances. Instead it lays out a governing principle and notes several examples. In certain circumstances prejudice "is so likely that case-by-case inquiry into prejudice is not worth the cost." *Strickland*, 466 U.S. at 692. For example, prejudice will be presumed "when counsel is burdened by an actual conflict of interest" or when there is an "[a]ctual or constructive denial of the assistance of counsel altogether[.]" *Id.* at 683-84. These are the two examples McDowell relies on.

McDowell's strongest argument is that he was constructively denied the assistance of counsel at a critical stage of his criminal proceeding. However, this argument ultimately fails because the circumstances in the present case do not rise to the level of denial of counsel required for a presumption of prejudice. McDowell characterizes *Cronic* as recognizing a presumption of prejudice when "there has been an actual or constructive denial of counsel at a critical stage of the proceedings." (Pet.'s Br. at 22.) However, *Cronic* does not contain the word "constructive." It discusses only the *actual denial* of counsel at a critical stage.[3] *Cronic*, 466 U.S. at 659. Furthermore, the cases McDowell cites to support his reading of *Cronic*'s "critical stage" language involve the actual absence of counsel at a critical stage. In *Hamilton v. Alabama*, 368 U.S. 52

---

[3]*Strickland,* which also discusses the presumption of prejudice, does mention constructive denial of counsel once. However, the context makes clear that the Court is referring to the constructive denial of counsel "*altogether*," not just at a discreet moment. *Strickland*, 466 U.S. at 683. The fact that petitioner testified in narrative format does not amount to a constructive denial of counsel altogether.

7

Case 2:05-cv-00498-WCG   Filed 08/08/06   Page 7 of 10   Document 22

(1961), the criminal defendant was completely without counsel when he pleaded to a capital charge and irrevocably waived other pleas. In *Penson v. Ohio*, 488 U.S. 75, 88 (1988), the defendant's appeals counsel erroneously moved to dismiss any appeal, leaving petitioner "completely without representation during the appeals court's actual decision process."

*Van Patten v. Deppisch*, 434 F.3d 1038 (7th Cir. 2006), presents facts more closely analogous to the present case. Even in that case, however, there are still significant differences which make it inapplicable. In *Van Patten* the Seventh Circuit held that when counsel represented his client at a plea hearing via speaker phone prejudice must be presumed pursuant to *Cronic*'s requirement that a criminal defendant must be represented at every critical stage. The court concluded that petitioner was "foreclosed from receiving an attorney's guidance and support" in several ways. *Id.* at 1043. There was no way for client and attorney to confer privately at the hearing. *Id.* Counsel's physical absence made it impossible both for the court to monitor counsel and for counsel to monitor his client. *Id.* There was no way of knowing if counsel was asleep or surfing the web during the plea hearing. *Id.* Additionally, the court acknowledged the implications of sanctioning telephonic representation in this era of busy schedules and creative technology. *Id.* at 1044 n.4.

In the instant case, counsel was physically present the entire time. Langford guided McDowell's testimony before he took the stand. Starting before the trial and up until the day McDowell's testimony was taken, Langford advised him "about his options including narrative testimony versus a question and answer testimony." 2003 WI App 168, ¶ 20 (quotations omitted). Specifically, Langford told McDowell, "once you start talking make sure you say everything you want to say. You are going to get one kick at the cat." *Id.* Langford also guided his client while

8

he was on the stand, instructing McDowell to tell the jury everything he "would like them to know regarding the allegations against [him] beginning with where [he was] and what [he was] doing on April 20, 1997, through the early morning hours of April 21, 1997." *Id.* ¶ 14. Additionally Langford's opening and closing arguments reinforced McDowell's account, reiterating the defense's explanation of the incriminating evidence. *Id.* ¶¶ 14-15. In light of these facts, the court cannot conclude that counsel's actions resulted in the constructive denial of assistance of counsel altogether.

McDowell's claim that prejudice must be presumed because Langford was working under a conflict of interest fails as well. This court adopts the Wisconsin Supreme Court's analysis of McDowell's conflict of interest claim:

> We also reject McDowell's claim that defense counsel had a conflict of interest that requires an automatic presumption of prejudice. Here, counsel's conflict stemmed from a perceived ethical dilemma between his duty of loyalty to his client and his ethical obligation to the court. This is not remotely the kind of conflict of interest at issue in *Cuyler* [*v. Sullivan*, 446 U.S. 335, 349-50 (1980),] and [*State v.*] *Kaye*[, 315 N.W.2d 337 (1987)]. *Cuyler* involved two attorneys' multiple representation of three defendants charged with murder. Similarly, *Kaye* involved one attorney's representation of two defendants in the same arson case. To equate the divided loyalties in those cases with the potential divided loyalties here misses the mark. In every case, an attorney's loyalty to the client is tempered by the rules of professional responsibility. That divided loyalty, however, is not the type of conflict of interest that rises to the level of a presumption of prejudice.

*State v. McDowell*, 2004 WI 70, ¶ 61, 681 N.W.2d 500, 516 (internal citations omitted). Additionally, McDowell misrepresents the holding of *Nix v. Whiteside*, 475 U.S. 157 (1986), when he uses it to support his contention that an attorney's refusal to present potentially perjured testimony is a conflict of the type relevant to this case. *Nix* notes that the fear of perjury presents

9

a conflict, but one that "is not remotely the kind of conflict of interests" involved in a presumption of prejudice analysis. 475 U.S. at 176.

## CONCLUSION

Petitioner's assertion that the Wisconsin Supreme Court and the Wisconsin Court of Appeals erred in failing to presume prejudice as a result of his counsel's deficient performance is not supported by clearly established federal law. Prejudice should not have been presumed given the facts of this case. Thus, the petition for a writ of habeas corpus is **DENIED.**

**SO ORDERED.**

Dated this __8th__ day of August, 2006.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge